UNPUBLISHED ORDER

Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 21, 2005[*]
Decided July 21, 2005

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. RICHARD D. CUDAHY, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 04-2923

| | |
|---|---|
| CORY D. ROBINSON, | Appeal from the United States |
| *Plaintiff-Appellant,* | District Court for the Central |
| | District of Illinois |
| *v.* | |
| | No. 02-CV-3126 |
| DONALD N. SNYDER, JR., et al., | |
| *Defendants-Appellees.* | Harold A. Baker, |
| | *Judge.* |

**O R D E R**

Cory Robinson claims in this action under 42 U.S.C. § 1983 that prison employees held him in disciplinary segregation on fabricated charges and retaliated when he complained about the guard who brought the charges. The district court first dismissed Robinson's due process claim, explaining that disciplinary segregation does not threaten a constitutionally protected liberty interest. The

---

[*] After examining the briefs and record, we conclude that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

court later granted summary judgment for the defendants on Robinson's equal protection and First Amendment claims, reasoning that Robinson lacked evidence to support his allegation that he was falsely accused because he is African American, or his allegation that his grievance prompted the defendants to lengthen his stay in segregation.  We affirm.

On September 10, 2001, Robinson left his cell at the Dixon Correctional Center in Illinois when correctional officer Anthony Alano called the inmates for evening yard time.  The doors to the yard were still closed when Robinson reached the group of inmates waiting to go outside, so he returned to the control window and asked Alano why the doors had not been opened.  Alano answered that one of the waiting inmates had yelled an insult, and that the doors would remain shut until the unknown inmate came forward and confessed.  According to Alano, Robinson countered that he may as well "open the fucking doors" because no inmate was going to come forward.  In his complaint Robinson disputed cursing but acknowledged that he told Alano: "Man, ain't nobody about to come tell on themselves.  You might as well chalk that up as a loss."  Robinson also told Alano that he was making everyone "pay for the action of one person" and that he was "making the situation worse."

At this point Alano asked Robinson his name.  Robinson asked Alano why he needed his name, and Alano repeated the question.  Robinson answered that he had already given his name when he signed out for the yard.  Alano then asked a third time, and Robinson gave him his identification card.  Alano wrote down Robinson's name and opened the doors to the yard.

As a result of the confrontation, Alano filed an inmate disciplinary report charging Robinson with disobeying a direct order, insolence, and threats and intimidation.  That same day, after being placed in segregation, Robinson filed a grievance complaining that the report was false and requesting release from segregation.  On September 17, an adjustment committee conducted a hearing on the disciplinary report.  Robinson testified and also submitted written statements from several witnesses.  The committee found Robinson guilty of disobeying and insolence for refusing to provide his name and criticizing Alano's handling of the incident, but absolved him of threats and intimidation.  The committee recommended that Robinson be placed in disciplinary segregation for 12 days, and the warden affirmed the recommendation.

Robinson first argues that the district court erred in dismissing his due process claim because the adjustment committee refused to let his witnesses testify in person and, he says, convicted him without adequate evidence.  But the Due Process Clause does not mandate procedural safeguards unless there exists a constitutionally protected liberty interest.  *See Lekas v. Briley*, 405 F.3d 602, 607

(7th Cir. 2005). Robinson was punished only with disciplinary segregation, and while punishments that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" may implicate a liberty interest, *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *see also Wilkinson v. Austin*, 125 S. Ct. 2384, 2394 (2005), we have held that disciplinary segregation does not rise to such a level, *Williams v. Ramos*, 71 F.3d 1246, 1248-50 (7th Cir. 1995).

Robinson next argues that the district court erred in granting summary judgment on his equal protection claim. Robinson's theory of racial discrimination is undercut by his admission that other African American inmates who yelled at Alano that day were never disciplined. *Cf. Lucas v. Chicago Transit Authority*, 367 F.3d 714, 732 (7th Cir. 2004) (requiring proof that similarly situated individuals "who were not members of the protected class" were treated more favorably in order to establish racial intent). Regardless, Robinson and the other inmates were not similarly situated. *See Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004). Robinson was charged because he, admittedly, was the only inmate to approach Alano and directly challenge the logic behind his decision to keep the door to the yard closed. In addition, Robinson was the only inmate who refused to provide his name when requested by Alano. Accordingly, Robinson's altercation with Alano provided a basis for a disciplinary charge that was not shared by the other inmates who simply yelled for the doors to be opened.

Robinson's retaliation argument is equally meritless. Robinson contends that the members of the adjustment committee retaliated for his grievance against Alano by refusing to take into account his time served in segregation in imposing his disciplinary sentence. However, Robinson's grievance was not resolved until after the hearing, and Robinson does not explain how the committee members knew about the existence of the grievance. Robinson's mere speculation that there is a causal link between grievance and punishment is insufficient to survive a motion for summary judgment on his retaliation claim. *See Borcky v. Maytag Corp.*, 248 F.3d 691, 695-97 (7th Cir. 2001).

AFFIRMED.